Hanson, Chancellor.
Injunction cannot issue until a bond to each of the parties to be injoined, &c. shall have been filed. (a)
After which the bill, as appears by an endorsement on it, was filed on the first of August, 1797, and on the next day there were filed five separate injunction bonds, given by the plaintiff Robert Walsh alone, with two sureties to those stated in the bill, as it then stood, to be the several holders of the bonds for the purchase money. These injunction bonds were inclosed in a letter to the Register, from the plaintiff’s solicitor, in which he says, ‘I believe the securities are sufficient.’ It does not appear, that they were by any note or writing approved by the Chancellor; but the injunction wTas immediately issued, and on the same day served on the clerk of the General Court, in which court the judgments had been recovered, or the suits were then depending.
There does not appear to have been any petition or written application to amend the bill, but upon the docket there is this entry, ‘December term, 1798, leave to amend bill by adding parties, amended bill filed.’ There was, however, in fact, no separate amended bill ever filed; but instead thereof, the original bill was amended by making sundry interlineations, and then it is certified at the end of it, that ‘on the 19th December, 1798, Robert Walsh made oath, that this bill, as amended, is true to the best of his knowledge, Samuel Harvey Howard.’
There appears to have been several interlineations made in the original bill; but, from the hand-writing of all, as well as from the nature of some of them, it is difficult to determine whether they are to be considered as mere corrections of the first draft of the bill, made before it was submitted to the Chancellor, or as amendments made under the leave. On adverting to the day of filing the bill, and on comparing the original bill itself with the writ of injunction, in which the name of Richard Emory is not mentioned, it appears, that the following interlined sentence, ‘and hath also endorsed and assigned one other of the said bonds, conditioned for the payment *14 of seven hundred and fifty pounds, unto a certain Richard Emory, who hath commenced suit in his own name, as assignee of the said Smyth, and at October term, in the year seventeen hundred and ninety-eight, recovered judgment thereon against your orator in the Western Shore General Court,’ inserted after the words, 'for the recovery thereof’ (*); and also the insertion of the name of Richard Emory in the prayer for the injunction, and in other parts of the bill, as a new party, are to be regarded as amendments under the leave. But it does not appear, that an injunction bond to Emory was ever filed, as was required in favour of the other defendants; or, that any writ of injunction was ever issued against him.
An order of publication was passed on the 12th of May, 1800, in the usual form, warning all the defendants who were therein stated to be non-residents of the state, to appear and answer. The proof of the publication of this order was made by producing the newspapers themselves.
On the 6th of January, 1802, Thom,as Smyth, James Clayland, and Benjamin Chew, filed their several answers, in which Smyth and Clayland specially and particularly deny all the allegations of defect of title,, of fraud, forgery and misrepresentation, as charged in the bill; and Chew states, that he had no knowledge of the contract respecting the lands; that the bonds he held were assigned to him for a valuable consideration; and that they were represented as free from abatement, and that the whole money was truly due.
Isaac Wikoff, on the 4th of August, 1804, filed his answer, in which he states, that he had no knowledge of the contract between the plaintiffs and Smyth and Lynch; that the bond he held, had been assigned to him for a valuable consideration, and that the money secured by it was then truly due. This answer was sworn to before the Mayor of the city of Philadelphia, and certified under the seal of the city.
On the 20th of December, 1804, a notice of motion to dissolve the injunction was entered on the docket, which at October term, 1805, was enlarged to that term. At February term, 1807, it was Ordered, that a commission issue to Georgia on striking commissioners. An agreement was filed on the 14th of April, 1807, not now to be found among the papers, and a commission issued by consent to Peter Lasly and Thomas P. Carnes, or either of them. At December term, 1810, Rule further proceeding by the fourth day of next term, or the bill to be dismissed. At February term, 1811, the injunction was ordered to be dissolved nisi 18th March. *15 On a letter from the solicitor of Walsh asking a postponement, the Chancellor on the 16th March, 1811, says, ‘The Register is directed not to certify the dissolution of the injunction until further order.’ July term, 1820, petition filed, order for commission nisi 22d of March, 1821, when a commission issued to complainants’ commissioners.
The death of Richard Emory having been suggested on the 21st of October, 1825, his executor Thomas L. Emory was made a party defendant, who on the 15th of December, 1825, filed his answer, in which he states, that he had no knowledge of the contract between the plaintiffs and Smyth and Lynch; which he believes, however, to have been in all respects fair; that the bond held by him had been assigned to his testator for a valuable consideration; and that no part of the judgment he had obtained on it had been paid.
On the 24th of December, 1825, an order of notice of motion to dissolve the injunction in the usual terms was passed. On a petition filed on the 16th of November, 1826, by the complainants, it was Ordered, that a commission issue to the complainants’ commissioners Thomas Russel, James B. Latimer, J. Spear Nicholas, and Robert Wilson, Jr., unless the defendants name and strike on or before the 27th of November, 1826. On the 28th of December, 1826, a commission was issued accordingly. A commission was issued on the 17th of February, 1830, to take testimony on the part of the plaintiffs, which was returned and filed on the 6th of March, 1830. Jared Bull, the only witness examined, stated, that in the year 1794, he went to Georgia as agent for the plaintiffs to examine and enquire into the title, situation and quality of the lands so purchased by them; that he could find no such warrants for some of the lands as represented by the vendors; that some off the lands were held by others under elder patents; and that other1 parcels of the lands were within the Indian territory.
6th September, 1830.
Bland, Chancellor.
This case standing ready for hearing, and having been submitted on notes by the solicitors of the parties, the proceedings were read and considered.
It is clear, that the purchase of the lands, which was the consideration of the several bonds, held by the defendants, must be taken as one entire and indevisible contract; although the bonds themselves are several, and have, for a valuable consideration, been assigned to and are now held by several distinct assignees. Consequently, if the consideration of those bonds is to be deemed a valid support for any one, it must, in like manner, be taken as a *16 sufficiently legal foundation to sustain them all; and that too, notwithstanding the default of the holders of any others of them in not answering as warned by the order of publication. The power of the court to take the bill pro confesso for the benefit of the plaintiff, upon a defendant not answering after a constructive notice by publication, must be taken to be subject to the nature of the case, and at its discretion; for otherwise, if the court was bound, as in a case of this kind, to take the bill pro confesso as against an absent defendant who had failed to answer, then it might be compelled to pass a contradictory decree; to say, that as against one defendant the consideration of a bond was legal and valid; and yet as against another, that the same consideration was corrupt and utterly worthless. It is certain that peculiar circumstances, in a case like this, where the bonds had passed into the hands of several distinct assignees, might have given to the plaintiffs a separate ground of relief against one assignee which would not be of any avail against the holders of the other bonds. But here it is manifest, that all the bonds having the same common consideration, that consideration must be impeached as to all, or be allowed to' stand as a legal support for all.
In. this case some of the defendants have answered and others have failed -to answer after publication; and all the allegations of the bill which would, if admitted or established, entitle the plaintiffs to the relief they ask, have been denied by the answers of the responding defendants, and have not been sustained by the proofs; therefore, as to them, that consideration which is common to' all the bonds remains valid and unimpeached. But the'same consideration cannot be' deemed valid in favour of one as to the whole purchase money, and utterly invalid as regards another claimant, who rests his pretensions altogether upon the same consideration. Hence, as this consideration has been sustained by the responding defendants, it must be deemed valid as to all, although the bill might, in other respects, have been taken pro confesso, as against those who have not answered, and therefore the plaintiffs can obtain relief against none of these defendants. (b)
*17 Whereupon it is Decreed, that the injunction heretofore granted in this case, be, and the same is hereby dissolved. And it is further Decreed, that the said bill of complaint, be, and the same is hereby dismissed with costs, to be taxed by the register.
John Glenn, as administrator de bonis non of Stephen Casenave, deceased, by his petition filed on the 24th of September, 1830, on oath, stated, that Stephen Casenave, one of the plaintiffs, died, and administration of his personal estate was granted by the Orphans Court of Baltimore, to James Walker, who died sometime about the year 1810; that at October term, 1798, the death of Stephen Casenave was suggested, and entered upon the docket, which entry was continued until 1814, when it was first omitted, and does not afterwards appear among the docket entries in the several continuances of the case; but that the name of Stephen Casenave appears in all the continuances of the case on the docket, and in all the answers and proceedings, where the title of the action is set forth, as one of the existing plaintiffs. That the petitioner on the 23d day of September, 1830, obtained letters of administration de bonis non, of all the goods, chattels and credits which were of the late Stephen Casenave. That the defendants Thomas Smyth, John Heathcote, James Dali, and James Clayland, are also dead; but no suggestion or other notice of the death of any of those defendants was made in the case, nor any process issued or proceeding had to make their representatives parties, or to make the representatives of the plaintiff Casenave parties; and that the court thus remained wholly uninformed of the death of the plaintiff Casenave, and of those defendants, while sundry proceedirigs were had to bring the case to a final hearing; and it was submitted for decision before full and competent testimony in support of the equity set forth in the bill was obtained.
*18 The petition further stated, that the dissolution of the injunction, by enabling the surviving defendants to issue executions at law on the judgments rendered more than thirty years ago, which have been levied on lands whereof the plaintiffs in the bill, or one of them, were or was seized at or since the time of their rendition, and long since sold for a valuable consideration to bona fide purchasers without actual notice, would cause great and irreparable injury to such purchasers, if an opportunity should not be given to them to be heard and to produce testimonyin support of the injunction. In particular as regards the creditors of Casenave, whose interest it is the duty of the petitioner to protect; and who, if this decree be allowed to stand as final, will be deprived of the value and proceeds of a large tract of land in the state of Kentucky, to which they would be entitled, if the injunction were made perpetual, as appears by an award made in a suit which was depending in Baltimore County Court, in which Samuel Moale, trustee of James Walker, an insolvent debtor, was plaintiff, against Robert Walsh defendant, which award is in these words,
‘We find that the said Robert Walsh the defendant, is indebted to the said Samuel Moale the plaintiff, trustee of James Walker, the surviving partner of the firm of Casenave 8f Walker, in the sum of $6,509 16, current money of the United States; and we do hereby award and order, that the said defendant shall pay to the said plaintiff the said sum of $6,509 16, within six months from the date hereof. And we do further award, that the said Robert Walsh, shall, by a good and sufficient deed, convey and make over unto the said Samuel Moale, trustee as aforesaid, his heirs and assigns, all his estate, right, title, claim and interest in and to certain tracts or parcels of land lying in Nelson county, in the state of Kentucky, containing about twenty thousand seven hundred eighteen and three-fourths acres of land, which he, the said Robert Walsh, acquired by virtue of a certain deed of conveyance, dated the 23d day of March, 1795, from a certain James Kerr to the said Robert Walsh. The said lands to be conveyed by the said Robert Walsh to the said Samuel Moale, as aforesaid, free, dear of and from all incumbrances which may have been created by the said Robert Walsh, and also clear of all taxes which have accrued since the date of the said deed from James Kerr to the said Robert Walsh; which lands we find were conveyed to the said Robert Walsh, as agent of Casenave fy Walker, of whom the said James Walker was surviving partner. Provided always, *19 however) and it is the true intent and meaning of this award, that the said Robert Walsh shall not be compelled to execute the said deed of conveyance until a perpetual injunction shall be granted by the honourable, the Chancellor of Maryland, in a cause or causes now depending in the High Court of Chancery, wherein the said Robert Walsh is complainant, and seeks to be protected against the effect of sundry judgments at law against the said Robert Walsh, obtained on bonds executed by the said Robert Walsh, to a certain Thomas Smyth, Jr. of the state of Georgia, which bonds we find were given by the said Robert Walsh, as agent of the said Casenave 8f Walker, of whom the said James Walker was surviving partner.’ Made and signed on the 17th of April, 1816; and judgment rendered thereon on the 4th of May, 1816.
The petition further stated, that the petitioner, from the information he has received, has good cause to believe, and does believe, that a gross fraud was practised on the plaintiffs by the pretended sale to them by Smyth and Lynch, of lands to which they had no good or valid title, as is set forth in the bill; and that if an opportunity were given by a rehearing of the cause, and admitting him as a party plaintiff thereto, he could and would obtain sufficient and competent testimony to sustain the allegations of the plaintiffs in the bill, on which the equity was founded which entitled them to the injunction originally granted; and to satisfy the court that it ought to be made perpetual.
Upon which the petitioner prayed, that the decree of the 6th of September, 1830, might be rescinded, the case reinstated, and the injunction heretofore granted revived and continued in full force until further order; that he might be made a party plaintiff according to the provisions of the act of Assembly; that all further proceedings at law, as heretofore enjoined, might be suspended and stayed until further order; and that he might have such other and further relief as the nature of his case required.
The petitioner by his supplemental petition stated, that at the time the case was set down for hearing, Casenave had no counsel in court; that the solicitor who had been employed by him died many years since; and those solicitors whose names were marked on the docket for the plaintiffs, appeared for and were the solicitors of Walsh alone; and then goes on to state as before, in his original petition, that the suit had not been revived against the representatives of Casenave. And then as before, prayed to be admitted as a *20 party, &c. To ¡the truth of this supplemental petition, William Gwynn, a solicitor of the petitioner, made affidavit in the usual form.
Whereupon, it was Ordered, that these applications stand for hearing on the 5th of October, then next, provided that copies be served, &c.
12th October, 1830.
Bland, Chancellor.
The petition of John Glenn, administrator de bonis non of Stephen Casenave, deceased, standing ready for hearing, the solicitors of the parties were fully heard, and the proceedings read and considered.
It has. been contended, that whatever may be the fate of this application, Richard Emory cannot be in any manner affected by it; because he was brought in by the amendment made to the original bill; and although an injunction had been asked for by that amendment, it does not appear that any writ of injunction was ever awarded against him. Whether such was the fact or not, or how far his judgment, and its incidental lien may be affected by the actual state of these proceedings, it may not be necessary at this time to determine, since he is dead, and his representative who was made a party to this suit, is not now here complaining of any thing.
But the indistinct manner in which the amendment has been made, in this case, has left an obscurity over it in this particular, which may perhaps hereafter be the occasion of much difficulty.
A supplemental bill is a distinct record; but an original and amended bill are, in general, treated as one entire bill, and as constituting, in fact,, but one record; and therefore, after a bill has been amended, the proceedings are on the amended bill; that is, on the original bill so amended. An amendment does not, however, alter the time of filing the original bill; it is only amended by virtue of an order dated on a day specified; so that the pendency of the suit, as to those parts which are amended, is only •from the time of filing the amendment; nor can the new matter introduced by an amendment be used in aid, or to the disadvantage of any thing previously done in the suit. As if a plaintiff had obtained an injunction on his original bill, and the defendant had answered, and then the plaintiff had amended his bill; the proceedings, to get rid of the injunction, must be on the original bill and the answer to it; the amendments cannot be used in support of. the injunction. (c)
*21 Hence it is evident, that whatever may be the nature of the amendment, it should be so perspicuously and distinctly introduced and placed upon the record as to afford the means of readily, and at once distinguishing the original bill from each one of the amendments to it, and also of ascertaining the day when each one of the amendments was put upon the record.
No amendment of a bill can be made without the leave of the court, which in all cases should be applied for by petition concisely stating the circumstances which render an amendment necessary. Under a leave to amend, a practice has however, prevailed here, as in England, of allowing short and apparently unimportant amendments to be made by interlineation; such as the mere correction of a verbal error; the alteration, striking out, or introduction of a name; (d) or the making of a single allegation, not materially varying the general structure of the case. But the safer and better course, in almost all cases, is to put the new matter upon the record by a separate amended bill; in which the original bill should be recited, no further than may be necessary to introduce the amendment, so as to avoid impertinency; for, as on the one hand the original perspicuity and distinctness of the record should be preserved, without obscuration or defacement, so on the other it is the duty of the court to discountenance as much as possible any attempt to put a suitor to unnecessary expense. Consequently, under a leave to amend, the plaintiff should not be permitted, as in this instance, by interlineation, to confuse the new with the original matter; or by an amended bill to recite all the allegations, and all the charges in the original bill, making a complete duplicate of the record. (e)
Much has been said about the mismanagement of this case; and it may be true, that the interests of the parties have been grievously neglected. But upon this occasion, and in this stage of the proceedings, I am not allowed to take into consideration the interests of any one who does not complain; nor can I regard the prayer of this petitioner farther than his rights maybe injuriously affected by the decree which has been passed.
*22 The plaintiff Robert Walsh does not ask for a rehearing, ‘and it is perfectly manifest, that he must be fully sensible of his not having a single shadow of a pretext to complain of having been taken by surprise by this decree. After a lapse of thirty-three years since the commencement of this suit by him, he surely cannot now be allowed to say, that the decree has taken him unprepared for the controversy; or that he could now, if permitted, obtain proof to establish the allegations of his bill. He therefore, it is clear, must be held firmly bound by the decree in every way whatever, subject only to an appeal.
It is alleged, that some of the defendants were dead long before the passing of this decree. If so the suit abated as to them ; and if the plaintiff Walsh had deemed it necessary, for his benefit, to have had the suit revived as against their representatives he might have done so. But since he has set the case down for hearing without calling for a revival of it against the representatives of the deceased defendants, he cannot now complain of the total dissolution of the injunction as to them, as it was not in their power to have revived this suit without his consent for any purpose, (f) But the representatives of the deceased defendants do not complain of any thing, and the plaintiff having failed to establish his case, the bill has been dismissed as to all the defendants; and thus no one of them has been injured by the decree, or subjected to any undue proportion of liability, or obtained any advantages not common to them all, so far as their interests may have been in anyway connected. (g)
The petitioner complains of the wrong done to his intestate; and of the injury likely to be done to his creditors. But it is perfectly clear, and indeed was admitted in the argument, that this suit having abated by the death of the petitioner’s intestate, it was totally at an end as to all his interests; and his representative being no party to the suit cannot, in any way whatever, be bound or affected by the decree which has been passed after that abatement.
The petitioner, therefore, can have no right to complain of the decree in any respect, as his intestate’s interests are not molested by it. If it be true that the consideration of the bonds, by which the petitioner’s intestate became jointly bound with the plaintiff Walsh, was unfounded and fraudulent, he may now avail himself of such circumstances in any manner the. law will allow, unembar *23 rassed, and entirely uninfluenced by this decree; and there can be no occasion to set it aside to let in his proofs, and to rehear this case for any such purpose. And besides, for aught that appears, or has been shewn, there are no assets real or personal, which were the property of the late plaintiff Casenave, that can or may be in any manner covered or protected by this injunction, even if it were made perpetual.
It has been urged, that so much of this decree as dissolves the injunction has been improvidently made; because it was awarded in a case to which the intestate of the petitioner had been a party; and that since his death it has been dissolved without his representative having been made a party, or being notified to revive.
It is true, that an abatement of a suit, in which an injunction had been granted, does not in strictness immediately and of itself dissolve the injunction; because the injunction, as a judgment of the court, gives a present vested right which must stand until reversed or revoked by the court itself. And it is therefore, a general rule, founded on the liberality of the court, that, in all such cases of abatement, to prevent the representatives of the deceased from being taken by surprise, notice must be given to them to revive, or that the injunction be dissolved. (h)
In this case the injunction has been dissolved, without any such notice; and, therefore, the only question now is, whether, looking to all the circumstances of this case, it might have been dissolved without any actual notice to the legal representatives of the late plaintiff Casenave%
According to the English authorities, such a notice, when required to be given, is in general very peremptory and short, usually not more than a week. (i) But the deceased party may have, in fact, no legal representatives, or they may be numerous and dispersed, or they may reside abroad, so that it would be impossible or very difficult to give them actual notice, (j) Where the representative was not a resident of this state, I have ordered notice to be entered on the docket to revive before the next term, or that the injunction then stand dissolved; and in that ease I declared, that *24 the lapse of time, nine years since the abatement, should be taken into consideration. (k)
But here the abatement took place more than thirty-two years ago, and there is strong reason to believe, that James Walker, the administrator of Casenave, must have known of the institution of this suit; because it is stated in the award exhibited by the petitioner, that the bonds, the consideration of which was the subject put in issue by this bill, ‘were given by the said Robert Walsh as agent of the said Casenave fy Walker, of whom the said James Walker was surviving partner.’ Considering Walker then as administrator, as surviving partner, and as joint cestui que use with Casenave, the presumption seems to be conclusive, that he must have been fully aware of the situation of this suit, and of the extent to which his and Casenave’s interests were likely to be affected by the continuance, or dissolution of the injunction. James Walker, therefore, could not have had any plausible pretext for asking, at this time, for any further indulgence, or to be allowed to come in and sustain the equity upon which the injunction had been granted. But Walker has been dead more than twenty years; and, during all that time, and when this decree was passed, there was, in fact, no one to whom notice could have been given by these defendants to revive, or have the injunction dissolved. A notice entered on the docket would have been nugatory and a mere waste of time. So that if it could not have been dissolved without notice of any kind, after such a lapse of time, it must have been allowed to stand, in effect, as a perpetual injunction. I am therefore of opinion, that under such circumstances the great lapse of time must of itself be deemed a sufficient ground to entitle any of the surviving parties, or the representative of a defendant, to claim and move for an immediate and total dissolution of the injunction. (l)
It has been urged, however, that as Casenave was originally a party with Walsh in this bill by which they jointly asked to have Smyth and Lynch, the vendors, decreed to refund the purchase money which had been paid to them, on the ground, that the consideration of the whole contract was fraudulent and had failed,, his representative was therefore a necessary party, without whom there could be no valid decree or regular dissolution of the injunction.
*25 But, although they might be allowed to join, it was not indispensably necessary that both Walsh and Casenave should have been originally made parties to this suit. The consideration of all the bonds was certainly one and indivisible, as regarded all the defendants who held and claimed payment of them; and that consideration, being joint, when put in issue, must stand or fall as regards them all. The relief, however, asked by Walsh and Casenave, was not so necessarily and indissolubly conjoined; they did not derive their title through a conveyance from several, some of whom were not parties to the suit; (m) nor did they or either of them ask the distribution of a fund in which they or either of them, with others, claimed a right to participate, (n) Either of them, without prejudice to the other, might have waived the benefit of any substantial ground of relief in this case, of which, both might have taken advantage. If their bonds had been tainted with usury, a plea of usury sustained in favour of one would not, of itself, be a bar to a recovery against the other, who did not choose to rely on any such defence, (o) Where a party rests his right to relief or recovery against several upon the validity of a claim or consideration, which is inseparably common to them all, in such case the decree would be palpably inconsistent which should grant relief against one and not against another, upon the ground that the same claim or consideration was good as to one and bad as to another. (p) But where several obligors have a ground of relief or defence of which all may take advantage, that relief or defence may certainly be asserted or waived by any one without prejudice to another of them, (q) So here, if the consideration of this purchase had so failed as to enable both Walsh and Casenave to claim a return of the purchase money from Smyth and Lynch, the court might grant relief, or sustain the defence of both, or of either Walsh or Casenave as against Smyth and Lynch; but as Smyth and Lynch must claim together under the same consideration, its invalidity must be established as to each, since the court must, upon that ground, grant the same relief to both of them.
Hence as Walsh and Casenave might each be relieved separately without prejudice to the other, or to the interests of these defendants, it was not indispensably necessary, that they should both *26 come or be brought before the court as parties to this suit, although they might well have been permitted to sue together, (r)
It would seem from the little interest taken in the matter by Casenave, for it appears that he never swore to the bill nor joined in the injunction bond, that he was by no means very earnest in assuming the position taken by Walsh.; and his administrator Walker, it would seem, had refused or neglected to concern himself about the affair in any way whatever. Upon the whole, I am of opinion, that this decree may well stand as it does, binding the interests of Walsh alone.
The petitioner asks to have the injunction reinstated and the case reheard, as a necessary means of protecting the interests which the creditors of his intestate have in the proceeds of a certain tract of land, in the manner described in the award exhibited by him. But, that award was made in a suit between Samuel Moale, trustee of James Walker, an insolvent, against Robert Walsh; and the conveyance directed by that award was to be made to that trustee of Walker; consequently, that trustee, and not this petitioner, is the representative of the creditors, who alone, by the terms of the award, are to be benefited by the continuance of the injunction. This petitioner is Casenave’s administrator, he represents him alone, and is considered in equity as a trustee for the benefit of Casenave’s creditors and next of kin. The award secures no benefit to them, but to the creditors of James Walker, the insolvent surviving partner of Case-nave. This award, therefore, secures to the administrator of Case-nave no beneficial interest whatever. And putting aside that document, the petitioner has shewn no assets nor any interests of his intestate which can be protected by him alone either for creditors or next of kin; and which, if he should not be let in as a party to this suit, can be in any way affected by the decree or the dissolution of the injunction.
It is alleged in the petition, that irreparable injury will be done to the bona fide purchasers without notice of the lands bound by the judgment rendered against the plaintiff, if the injunction be dissolved without giving them an opportunity of being heard, and of producing testimony in support of the injunction.
• But those judgments, being liens of record, were in themselves, *27 notice to those purchasers; and they being no way concerned with this matter in controversy, farther than as they voluntarily involved themselves in its consequences, by purchasing the lands which were so bound, they can have no right to come in as parties, or to have a rehearing of the case. If the lands which they purchased had been the immediate subject of controversy in this suit, pending which they had purchased, then that lis pendens would clearly have been such a notice to all such purchasers as effectually to bind them to abide by the event of the suit, without having the privilege of being admitted as parties to it in any manner whatever, (s) But those purchasers of the realty do not complain; and even if they did, the personal representative of Casenave cannot be allowed to come here as the bearer of their complaints; and there is no heir or devisee to whom Casenave1s real estate passed on his death, asking to be let in as parties, or to have this decree rescinded and the case reheard, for the protection of their interests or of those of any one who claims under their ancestor or devisor. This decree therefore cannot be disturbed for any such purpose.
The petitioner alleges, that if permitted to come in as a co-plaintiff, he could and would obtain sufficient proof to establish the matters set forth in the bill. He does not pretend to have discovered any testimony which was not known to him in time to have had it produced and used at the hearing of the case; nor does he in any manner account for the very great negligence of Casenave, or of his administrator Walker, or of those who must have had a legal and beneficial object in sustaining Casenave’s interests, if any he had after the death of Walker, he never having attempted to come in and bring before the court, that sufficient and competent testimony wdiich he now says he believes may be obtained for that purpose.
If such general and loose allegations as these were to be deemed sufficient ground to open a decree and to grant a rehearing of the case, there would be no end to litigation. It is a most incumbent duty of the court, to take care that the same subject should not be put in a course of repeated litigation, and with that view, to require of parties reasonably active diligence in the first instance. (t) If the representative of Casenave, or those by whom it was fit to have his interests taken care of after his death, had used any ordinary dili *28 gence, they certainly might have brought before the court in this suit, in a course of thirty-two years, which has elasped. since his death, every particle of that competent and sufficient testimony which the petitioner says might even yet be obtained. It is not enough to shew that injustice has been done in any instance, even supposing a case of that sort to have been exhibited by the petitioner, but that it has been done under circumstances which authorize the court to interfere. The court must see that injustice has been done, not merely through the inattention of a party, but that owing to some peculiar state of things, he could not have sooner availed himself of his means of relief; that he was ignorant of his proofs, or that the matter on which he relies, could not have been sooner or otherwise brought before a court of justice for adjudication. (u) In fine, I am entirely satisfied that the prayer of the petitioner ought not to be granted.
Whereupon it is Ordered, that the said petition, filed by John Glenn, administrator de bonis non of the late Stephen Casenave, and also the said supplemental petition, be and the same are hereby dismissed, with costs to be taxed by the register.

 Williams v. Hall, 1 Bland, 194, note; Billingslea v. Gilbert, 1 Bland, 366.

 Lingan v. Henderson, 1 Bland, 236.
Dorsey v. Dorsey. — The bill stated, that Edward Dorsey had given his bond to ' Ely Dorsey for the payment of ¿642 15s. Id.; that the bond was lost; that the claim had been assigned to the plaintiff; that the obligor was dead; that his personal estate had been exhausted in the payment of his debts ;• and that he had devised his real estate to the defendants, in whose hands the bill prayed that the real assets *17 might be charged with the payment of his debts. Some of the heirs answered, as to all of whom, upon the hearing, the bill was dismissed.
22d January, 1800. — Hanson, Chancellor. — As to the defendant Deborah Dorsey, executrix of Edward Dorsey, who has been regularly summoned, and stood out the process of attachment, and attachment with proclamations, and failed to appear and answer agreeably to law, the Chancellor is by law to take, and the bill is hereby taken pro confesso. And this case shews plainly the impropriety of directing the Chancellor absolutely to take any hill pro confesso. But inasmuch as the bill states, that the personal estate of the testator is exhausted, it does not appear, that the complainant can have any benefit from the said taking; and the Chancellor being authorized to decree what appears just; (1785, ch. 72, s. 19.) It is Decreed, that the bill as to Deborah Dorsey be, and the same is hereby dismissed, &c.

 Vernon v. Vawdry, 2 Atk. 119; Long v. Burton, 2 Atk. 218; Vere v. Glynn, 2 Dick. 441; McMechen v. Story, 1 Bland, 184, note.

 Gambril v. Lyon and others. 20 June, 1804. — Hanson, Chancellor. — On application of the complainant, leave is given to strike out the defendant It. Lyon, as immaterial, M. S. — 1 Newland’s Pra. Chan. 198 ; Pitt v. Macklew, 1 Cond. Chan. Rep. 67, note; M’Comb v. Armstrong, 12 Cond. Chan. Rep. 459.

 Willis v. Evans, 2 Ball and Bea. 228 ; Boyd v. Mills, 13 Ves. 86; Webster v. Threlfall, 1 Cond. Chan. Rep. 67; 1 Newl, Prac. Cha. 193 ; 1 Monta. Dig. 297; 1 Fowl. Exch. Pra. 106; Onge v. Truelock, 12 Cond. Chan. Rep. 332.

 Griffith v. Bronaugh, 1 Bland, 548.

 Mandeville v. Riggs, 2 Peters, 482.

 Chandos v. Talbot, Sel. Ca. Cha. 24; White». Hayward, 2 Ves. 461; Forum Rom. 198; Eden Ing. 93; 2 Mad. Cha. 533; 1 Fowl. Exch. Pra. 287.

 Stuart v. Ancell, 1 Cox, 411; Hill v. Hoare, 2 Cox, 50.

 Carter v. Washington, 1 Hen. and Mun. 203.

 Griffith v. Bronaugh, 1 Bland, 547.

 Willis v. Yates, 8 Cond. Cha. Rep. 512.

 Dandridge v. Washington, 2 Peters, 376.

 Hunt v. Wickliffe, 2 Peters, 215.

 Selwyn’s N. P. 582.

 Lingan v. Henderson, 1 Bland, 236.

 Whetcroft v. Christee, 4 H. and McH. 387.

 Yinley v. Bank U. S. 11 Wheat. 304; Minor v. The Mechanics Bank of Alexandria, 1 Peters, 47; The Mechanics Bank of Alexandria v. Seton, 1 Peters, 306.

 The Mechanics Bank of Alexandria v. Seton, 1 Peters, 299.

 Young v. Keighly, 16 Ves. 351.

 Bateman v. Willoe, 1 Scho. & Lefr. 204; Kemp v. Squire, 1 Ves. 206; Stanard v. Rogers, 4 Hen. & Mun. 439; Winston v. Johnson’s executors, 2 Mun. 305; Erwin v. Vint. 6 Mun. 267.